In the Matter of Edward TOTI, Debtor.

Edward TOTI, Plaintiff,

v.

UNITED STATES of America, Defendant.

Bankruptcy No. 88–05085.
Adv. Pro. No. 90–0191–S.

United States Bankruptcy Court,
E.D. Michigan, S.D.

May 22, 1992.

Paul H. Steinberg, Goldstein, Bershad, Steinberg & Fried, P.C., Southfield, Mich., for plaintiff.

Mark D. Lansing, Trial Atty., Tax Div., U.S. Dept. of Justice, Ben Franklin Station Washington, D.C., for defendant.

## OPINION IN RESPECT TO CROSS–MOTIONS FOR SUMMARY JUDGMENT

WALTER SHAPERO, Bankruptcy Judge.

## I. FACTUAL BACKGROUND

The debtor Edward W. Toti ("Toti") is a self-employed independent insurance agent. From 1961 to 1973 Toti timely filed all of his federal income tax returns and paid any and all such taxes owing to the Internal Revenue Service ("IRS"). In 1974, due to his inability to pay his federal income tax liability for that year, Toti did not file a return. In 1975, Toti again was unable to pay his federal income tax liability for the year and did not file a return. Primarily as a result of the penalties and interest that were accruing on prior tax liabilities, Toti became fearful of the consequences that might result from the filing of subsequent returns and thus failed to do so through 1980. In 1981, the United States ("Government") indicted Toti on three (3) counts for failure to file federal income tax returns for the years 1974, 1975 and 1976.

On June 4, 1981, Toti was sentenced, as a result of a plea agreement, by the United States District Court for the Eastern District of Michigan for willfully failing to file returns for the years 1974, 1975 and 1976 pursuant to 26 U.S.C. § 7203, a misdemeanor statute. Pursuant to the plea agreement, Toti agreed to plead guilty to willfully failing to file an income tax return for the year 1976, in return for the Government dismissing Counts I and II, representing the tax years 1974 and 1975.

In 1982, following his conviction, Toti filed all of his delinquent federal tax returns for 1974–1981 inclusive but only paid his 1976 federal tax liability. He did not pay the tax liabilities for the other years which he filed the delinquent returns. In

April, 1985, Toti negotiated a payment plan with the IRS for the payment of the unpaid back taxes. Toti made some timely payments but fell behind and then the IRS began levying on his pension income, causing him serious financial difficulties.

On February 27, 1990, Toti filed a Chapter 7 petition in the United States Bankruptcy Court. On March 28, 1990, Toti filed an adversary proceeding[1] to determine the dischargeability of tax obligations for unpaid federal income taxes for the tax years 1975 through 1983, excluding the year 1976 (which he paid) and to require the IRS to turn over the funds in the amount of $4,464.39 levied upon post-petition. Toti also seeks damages against the IRS for violation of the automatic stay by reason of its post-petition actions in levying on his pension income. In an answer filed on April 24, 1990, the IRS asserts (a) that tax liabilities for the years 1974 through 1983 (excluding the year 1976), are nondischargeable under § 523(a)(1)(C) and (b) it cannot be sued for stay violation damages because the Government has not waived its sovereign immunity in respect to such an action.

Both parties filed motions for summary judgment on the issue of dischargeability under § 523(a)(1)(C). In addition, the IRS moved for summary judgment on the issue of sovereign immunity.

## II. DISCUSSION

A. Standards Used in Granting or Denying Motions for Summary Judgment

Motions for summary judgment should not be granted unless no genuine issue of material fact remains to be decided and the moving party is entitled to judgment as a matter of law. *In re Fernandez*, 130 B.R. 757 (Bankr.W.D.Mich.1991). The function of a motion for summary judgment is not to allow the court to decide issues of fact but rather to determine whether there is an issue of fact to be tried. *United States v. Articles of Device, Ect.* 527 F.2d 1008, 1011 (6th Cir.1976); *Aetna Ins. Co. v. Cooper*

---

1. In the case of tax obligations, it is the burden of the debtor, rather than the taxing authority, to initiate a discharge action. 11 U.S.C. § 523(c); Fed.R.Bankr.P. 4007(c).

*Wells & Co.*, 234 F.2d 342, 345 (6th Cir. 1956). The moving party bears the burden of clearly establishing the nonexistence of any genuine issue of fact material to a judgment in his favor. *Fernandez* at 761. If a disputed question of material fact remains, the motion for summary judgment must be denied. *Id.* Thus, the court must examine all facts established by the record before it and conclude that no genuine issue of material fact exists before granting summary judgment.

B. Dischargeability of Federal Taxes

Under Bankruptcy Code § 523(a)(1)(B)(ii) a delinquent return filed within two (2) years prior to the filing of a bankruptcy case renders nondischargeable the taxes for tax years to which those returns apply. Although Toti's tax liability could be dischargeable since he filed all the delinquent tax returns in 1982 (eight (8) years prior to filing a Chapter 7 petition), long before the time frame prescribed by the Code, the IRS asserts that pursuant to Code § 523(a)(1)(C), the tax liability is excepted from discharge.

Code § 523(a)(1)(C) provides as follows:

§ 523. Exceptions to discharge.

(a) A discharge under Section 727, 1141, 1228(a), 1228(b), or 1328(b) of this title does not discharge an individual debtor from any debt—

(1) for a tax or a customs duty—

(C) with respect to which the debtor made a fraudulent return or willfully attempted in any manner to evade or defeat such tax;

The IRS asserts that Toti's decision not to pay the taxes for the tax years 1974 through 1983 (excluding the tax year 1976), (even though he filed the returns) evidences the willfulness necessary to (a) convict the debtor for felonious criminal willfulness to evade or defeat a tax, and (b) the willfulness which afforded the basis for his plea to evade or defeat a tax, required under Code § 523(a)(1)(C).

Toti asserts that his indictment for failure to file federal income taxes for the years 1974 through 1976 and his plea of guilty for failure to file a federal tax return for 1976 is proof only that he failed to file.

Toti contends that the language of Code § 523(a)(1)(C) is similar to § 7201 of Title 26 of the United States Code, a felony statute on criminal evasion of taxes, which reads:

**26 U.S.C.A. § 7201. Attempt to evade or defeat tax**

Any person who willfully attempts in any manner to evade or defeat any tax imposed by this title or the payment thereof shall, in addition to other penalties provided by law, be guilty of a felony and, upon conviction thereof, shall be fined not more than $100,000 ($500,000 in the case of a corporation), or imprisoned not more than 5 years, or both, together with the costs of prosecution.

Toti was charged and convicted of failure to file his federal tax return, for the year 1976, under Section 7203 of Title 26 of the United States Code, a misdemeanor, which reads in pertinent part:

26 U.S.C.A. § 7203. Willful failure to file return, supply information, or pay tax

Any person required under this title to pay any estimated tax or tax, or required by this title or by regulations made under authority thereof to make a return, keep any records, or supply any information, who willfully fails to pay such estimated tax or tax, make such return, keep such records, or supply such information, at the time or times required by law or regulations, shall, in addition to other penalties provided by law, be guilty of a misdemeanor and, upon conviction thereof, shall be fined not more than $25,000 ($100,000 in the case of a corporation), or imprisoned not more than 1 year, or both, together with the costs of prosecution.

Toti asserts essentially that the requirements necessary to show a willful attempt to evade or defeat the payment of income taxes under § 523(a)(1)(C), are those contemplated *only* by the felonious offense of willful attempt to evade or defeat the payment of income taxes under § 7201. Toti argues, the conviction under the misde-

meanor offense of willful failure to pay taxes or file returns, pursuant to § 7203, involves a lesser burden of proof or finding than a willful attempt to evade or defeat under § 7201.

Therefore, Toti claims the IRS has no basis for its assertion that Toti *willfully* attempted to evade his federal income tax liabilities for those years, and as such, Toti is entitled to a discharge of his tax obligations for the tax years 1974 through 1983.

■■■ It is undisputed that § 7203 defines a lesser included offense of § 7201. *U.S. v. DeTar*, 832 F.2d 1110 (9th Cir.1987). The elements of § 7203 are: (1) willfulness and (2) failure to pay the tax when due. *Sansone v. United States*, 380 U.S. 343, 351, 85 S.Ct. 1004, 1010, 13 L.Ed.2d 882 (1965). Section 7201 requires the same two (2) elements of willfulness and an unpaid tax, plus a third: an affirmative act constituting an evasion or attempted evasion of the tax *Id.*

It would seem that the word or concept of willfulness embodied in § 7201 (felony) and § 7203 (misdemeanor) is:

(a) a uniform one;

(b) connotes a voluntary intentional violation of a known legal duty; and

(c) a conviction of the misdemeanor clearly supports a conviction for the felony, insofar as the willfulness element is concerned. *See e.g., United States v. Bishop*, 412 U.S. 346, 93 S.Ct. 2008, 36 L.Ed.2d 941 (1963); *United States v. Pomponio*, 429 U.S. 10, 97 S.Ct. 22, 50 L.Ed.2d 12 (1976); *Cheek v. United States*, ── U.S. ──, 111 S.Ct. 604, 112 L.Ed.2d 617 (1991); *Sansone v. United States*, 380 U.S. 343, 85 S.Ct. 1004, 13 L.Ed.2d 882 (1965).

■■ The issue in this case is whether the facts establish by a preponderance of the evidence that Toti willfully attempted to evade or defeat his federal income tax liability within the meaning of § 523(a)(1)(C).

Review of Supreme Court case law on the above issue and the sameness of the statutory language convinces the Court (in agreement with Toti) that the phrase "willfully attempted in any manner to evade or defeat such tax" in § 523(a)(1)(C) should be interpreted to mean and contain the same elements as specified in § 7201.

The Supreme Court has made it clear that a conviction for a felony of tax evasion under § 7201 requires a showing of "some willful *commission* in addition to the willful omissions that make up the list of misdemeanors." *Spies v. United States*, 317 U.S. 492, 499, 63 S.Ct. 364, 368, 87 L.Ed. 418 (1943).

In *Spies,* Spies failed to file a return or pay a tax in a year in which he admittedly had sufficient income to require him to do both. The issue with which the Supreme Court dealt was whether this conduct could constitute a willful attempt to evade under what is now § 7201. The Court held that without other proof, it could not. The Court referred to the statutory provision that willful failure to file or to pay are misdemeanors, and concluded that a willful attempt to evade, in order to constitute a felony, must logically be something more. The Court then reasoned that this "is found in the affirmative action implied from the term 'attempt' as used in the felony subsection." *Spies,* 317 U.S. at 498, 63 S.Ct. at 368. The Court stated:

> We think ... Congress intended some willful commission in addition to the willful omissions that make up the list of misdemeanors.... [W]e would think affirmative willful attempt may be inferred from conduct such as keeping a double set of books, making false entries or alterations, or false invoices or documents, destruction of books or records, concealment of assets or covering up sources of income, handling of one's affairs to avoid making the records usual in transactions of the kind, and any conduct, the likely effect of which would be to mislead or conceal. *Spies,* 317 U.S. at 499, 63 S.Ct. at 368.

The *Spies* list of illustrations may be read as suggesting that the required acts of commission should be of such a character as is likely to mislead or conceal, and thus hinder detection and, should do more than is done by a simple omission.

Although the decision by the Supreme Court in *Spies* does not address § 7201 in relation to dischargeability under § 523(a)(1)(C), bankruptcy court case law relied upon *Spies* to do so.

In *In re Gathwright*, 102 B.R. 211 (Bankr.D.Or.1989), the debtor sought a determination that certain taxes and penalties assessed by the Internal Revenue Service ("IRS") were discharged in his Chapter 7 case.

Debtor asserted that he failed to timely file his federal income tax returns for the years 1976, 1978 and 1979 as a result of financial difficulties. Testimony indicated that at the time the tax returns at issue were due, and continuing until they were filed, debtor was under extreme financial pressure, his wife suffered from medical problems and he was involved in an automobile accident that adversely affected his eyesight and thus, his ability to work.

In determining whether the debtor's tax liability was nondischargeable under § 523(a)(1)(C), the Court, relying upon *Spies*, agreed with the IRS that the Code phrase "willfully attempted in any manner to evade or defeat such tax" should be interpreted in the same way as § 7201. *Id.* at 213.

The Court relied upon the illustrations set forth in the *Spies* case to determine whether any affirmative willful attempt could be inferred from the debtor's conduct. The Court concluded that the IRS did not prove that the debtor engaged in any willful conduct to evade or defeat the tax under § 523(a)(1)(C).

The Court found that the IRS' testimony indicated that (1) the debtor did not refuse IRS' request to turn over his records and books, or destroy them; (2) debtor did not hide income in undisclosed accounts; and (3) debtor's books and records were sufficient to allow a determination of the tax liability owed. The Court held, at most "his debt to the IRS is a result of sloppy or negligent conduct, not fraudulent or willful conduct." *Id.* at 216. Thus, the Court held that the debtor's tax liability was dischargeable.

█ This Court concludes that the IRS did not present any evidence to indicate that Toti engaged in any willful *commission* to evade or defeat the tax. The fact that Toti admits he knew he had a responsibility to timely file and pay federal income tax for the years 1974–1983 and that he voluntarily and intentionally failed to file and pay those taxes as an initial result of lack of money·and eventually fear of filing subsequent returns, merely constitutes an omission. No facts indicate that Toti engaged in any type of conduct which would prove he attempted in any manner to evade or defeat his federal income tax. Absent such proof, the IRS cannot satisfy the requirements under § 7201 or § 523(a)(1)(C) and Toti is entitled to have his tax obligations for the years 1974 through 1983 discharged. Therefore, Toti's motion for summary judgment, with respect to this issue, is granted.

## C. Violation of the Automatic Stay and Sovereign Immunity

Toti asserts that subsequent to the filing of the Bankruptcy petition, the IRS levied upon and seized on four (4) separate occasions, post-petition pension plan payments and post-petition commissions payable [2] to Toti in clear violation of the automatic stay.

Pursuant to § 362, Toti states the IRS has an obligation to restore the pre-petition status quo by returning the improperly seized property to Toti.

Toti claims that the IRS' failure to comply with the automatic stay, and its failure to restore the status quo voluntarily also subjects the IRS to the contempt powers of the Court.

In response, the IRS asserts that this Court is without jurisdiction to award dam-

---

**2.** Toti contends the pension plan payments and commissions were seized on or about the following dates and in the following amounts:

| Date | Amount |
|---|---|
| March 1, 1990 | $1,500.00 |
| March 6, 1990 | $ 167.31 |
| March 12, 1990 | 1,640.00 |
| March 13, 1990 | 1,157.08 |
| Total | $4,464.39 |

ages (either compensatory or punitive) or attorney's fees against the IRS under § 362(h) because it has not waived its sovereign immunity[3] for such an action. In addition, the IRS claims that assuming, *arguendo*, sovereign immunity is not a bar to an award of attorneys fees under § 362(h), the Court would err in awarding costs and attorney's fees since Toti was not injured by violation of the stay.

Examination of the pleadings submitted in this matter indicate that there is a factual dispute as to when the pension plan payments and commissions were seized from Toti. As referenced above in Footnote 3, Toti claims the IRS seized four (4) post-petition amounts. On the other hand, the IRS asserts that it received only one (1) payment, on March 23, 1990, subsequent to the time of the filing of the bankruptcy petition. The Court believes that as long as the parties are in agreement that there was at least one (1) post-petition transfer, it is unnecessary to determine the precise amount for purposes of the issue as to whether the IRS violated the automatic stay.

■ The Sixth Circuit holds that actions taken in violation of the automatic stay are void *ab initio*. See *In re Smith*, 876 F.2d 524 (6th Cir.1989); *NLRB v. Edward Copper Painting, Inc.*, 804 F.2d 934 (6th Cir. 1986). Such actions, regardless of notice of the filing, are void and of no effect. *Id.*

■ It is quite clear to the Court that application of the law in the Sixth Circuit to either parties factual assertions indicates that the payment(s) seized by the IRS were post-petition and in violation of the stay.

As a result of the IRS' violation of automatic stay, Toti seeks to hold the IRS in contempt and to recover his costs, interest and attorneys fees.

■ Civil contempt sanctions may be imposed even in the absence of willfulness. *In re Shafer*, 63 B.R. 194 (Bankr.D.Kan. 1986). In addition, accidental, inadvertent or negligent conduct can be grounds for imposing civil contempt sanctions, and those sanctions may include attorney fees. *Id.*

■ A stay violation is willful when the party acts with knowledge of the filing of the bankruptcy. In the present case, Toti filed his bankruptcy petition on February 21, 1990. On March 2, 1990, the IRS stated it received notice of the § 341 Hearing. However, the IRS did not release the levies until April 2, 1990.

■ A creditor must release the levy within a reasonable period of time after notice of the bankruptcy. *In re Carlsen*, 63 B.R. 706, 710 (Bankr.C.D.Cal.1986). The Court concludes that the IRS did not act within a reasonable period of time in releasing the levies. Facts presented by the IRS show that on March 30, 1990, when the IRS received a copy of the dischargeability complaint, it assigned an agent to the case who contacted the revenue officer to release the levies on April 2, 1990. However, the IRS' receipt on March 2, 1990 of the notice of § 341 Hearing was its notice of the bankruptcy and the effect of the stay. *In re Price*, 103 B.R. 989 (Bankr. N.D.Ill.1989); *In re Wagner*, 74 B.R. 898 (Bankr.A.D.Mo.1988). The IRS must be charged with the knowledge of its agents. *Price* at 993. The size and complexity of the IRS does not excuse its disregard for the automatic stay. *In re Santa Rosa Truck Stop, Inc.* 74 B.R. 641, 643 (Bankr. N.D.Fla.1987).

---

3. Section 106 of the Bankruptcy Code addresses the waiver of sovereign immunity by "Governmental units" in bankruptcy cases:

**106. Waiver of Sovereign Immunity**

(a) A governmental unit is deemed to have waived sovereign immunity with respect to any claim against such governmental unit that is property of the estate and that arose out of the same transaction or occurrence out of which such governmental unit's claim arose.

(b) There shall be offset against an allowed claim or interest of a governmental unit any claim against such governmental unit that is property of the estate.

(c) Except as provided in subsections (a) and (b) of this section and notwithstanding any assertion of sovereign immunity—

(1) a provision of this title that contains "creditor", "entity", or "governmental unit" applies to governmental units; and

(2) a determination by the Court of an issue arising under such a provision binds governmental units.

Thus, the circumstances warrant imposition of monetary civil contempt sanctions to compensate Toti.

 The principal defense of the IRS against such is that it is protected by virtue of the sovereign immunity of the United States which it asserts has not been waived. The IRS contends that the United States Supreme Court opinion in *Hoffman v. Connecticut Dep't of Income Maintenance*, 492 U.S. 96, 109 S.Ct. 2818, 106 L.Ed.2d 76 (1989) made it clear that the United States is not subject to awards of damages under § 106(c).[4]

The Court believes the IRS' reliance is inappropriate. The holding in *Hoffman* does not apply to the federal government. See *In re Price*, 103 B.R. 989 (Bankr. N.D.Ill.1989). Rather, the Supreme Court decided the issue of whether § 106(c), the sovereign immunity provision, violated the 11th Amendment immunity of states. Important dicta is contained in a statement by the plurality which notes that "the language in § 106(c) waives the sovereign immunity of the federal government so that the federal government is bound by determinations of issues by the Bankruptcy Courts even when it did not appear and subject itself to the jurisdiction of the Court." (Citation omitted) *Hoffman* 109 S.Ct. at 2823.

In addition, the IRS relied upon the Sixth Circuit Court of Appeals case *In re Nordic Village*, 915 F.2d 1049 (6th Cir.1990). In *Nordic Village*, the Court considered the question of whether § 106(c) waived the defense of sovereign immunity. The Court held that 11th Amendment considerations are irrelevant when applying § 106(c) to the federal government and the question was merely one of statutory interpretation. The Court held that the IRS could not assert the defense of sovereign immunity. However, on February 25, 1992, the United States Supreme Court, reversing the decision of the Sixth Circuit Court of Appeals, held that § 106(c) did not contain an unequivocal textual waiver of the federal government's immunity from a bankruptcy

trustee's claims for monetary relief. The Supreme Court stated that waivers of the Government's sovereign immunity had to be unequivocally expressed, and that § 106(c) failed to establish unambiguously that its waiver extended to monetary claims. In order to construe the entirety of § 106 so that every word had some operative effect (in accordance with the rules of statutory construction), the Court determined that the most feasible interpretation gave § 106(c) the range to permit a bankruptcy court to issue declaratory and injunctive relief, but not monetary relief, against the government. The Court further declined to examine legislative history, for without a clear and unequivocal expression of waiver in the statutory text, it found that such clarity could not be supplied by a committee report.

The Supreme Court's decision makes it apparent to this Court that the sort of monetary relief requested by Toti, including the post-petition pension plan payments seized by the IRS, must be denied. Therefore, the IRS' motion, with respect to this issue, is granted.

The prevailing parties shall present appropriate orders consistent with this opinion.

---

4. Section 106(c) abolishes the defense of sovereign immunity in cases where suit is brought under a provision of the Bankruptcy Code that uses the words "creditor," "entity," or "governmental unit." The automatic stay, by the term of § 362 is applicable to all entities.